PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHNNY EVANS, | ) | |
| | ) | CASE NO. 4:24CV1499 |
| Plaintiff, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | |
| ANTHONY DAVIS, Warden, *et al.*, | ) | **MEMORANDUM OF OPINION AND ORDER** |
| | ) | |
| Defendants. | ) | [Resolving ECF No. 37] |

Pending is Defendants Warden Anthony Davis ("Warden Davis"), Brian Evans ("Deputy Warden Evans"), and Interested Party State of Ohio's[1] ("Defendants") First Motion for Summary Judgment Concerning Exhaustion (ECF No. 37). Defendants move the Court to enter summary judgment in their favor because Plaintiff Johnny Evans ("Mr. Evans") failed to exhaust his administrative remedies under the Prison Litigation Reform Act, 42 U.S.C. § 1997e ("PLRA"). The Court has been advised, having reviewed the record, the parties' briefs, and the applicable law. For the reasons that follow, the Court denies the motion because whether Plaintiff's lack of compliance with the exhaustion requirement is excused is a question of fact that is not for a judge to resolve.

## I. Background

### A.

The Case Management Plan provides, in pertinent part:

---

[1] The State of Ohio appears as an interested party pursuant to Ohio Rev. Code § 109.361.

> Lead counsel of record shall confer with one another in person in order to prepare written stipulations as to all uncontested facts to be presented by the dispositive motion. . . . If there are no stipulations, a joint notice stating same shall be filed. . . . These are mandatory requirements.

ECF No. 30 at PageID #: 154, ¶ 16. As previously noted by the Court, *see* Order (ECF No. 41) at PageID #: 285-86, no stipulations or joint notice were filed.

**B.**

Plaintiff is a state inmate previously incarcerated at the Trumbull Correctional Institution ("TCI"). He filed this civil rights action under 42 U.S.C. § 1983 against Warden Davis and Deputy Warden Evans alleging failure to protect/failure to prevent harm (First Cause of Action) and supervisory liability (Second Cause of Action) because "[o]n September 11, 2023, while incarcerated at [TCI], Mr. Evans was brutally assaulted by three inmates, one of whom beat Mr. Evans' face with a brick retrieved from a construction site located on the grounds of the prison." Second Amended Complaint (ECF No. 31) at PageID #: 156, ¶ 1.

## II. Standard of Review

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also* *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). Fed. R. Civ. P. 56(c)(1)(A) requires a party requesting summary judgment in its favor or an opposing party "to go beyond the pleadings" and argument, *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986), and cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of

the motion only), admissions, interrogatory answers, or other materials." The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial." *Guarino v. Brookfield Twp. Trustees.*, 980 F.2d 399, 403 (6th Cir. 1992).

Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of genuine dispute. An opposing party may not simply rely on its pleadings. Rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). The non-moving party must, to defeat the motion, "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980 F.2d at 403. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

The United States Supreme Court, in deciding *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), stated that in order for a motion for summary judgment to be granted, there must be no genuine issue of material fact. *Id.* at 248. The existence of some mere factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A fact is "material" only if its resolution will affect the outcome of the lawsuit. In determining whether a factual issue is "genuine," the court must decide whether the evidence is such that reasonable jurors could find that the non-moving party is entitled to a verdict. *Id.* Summary judgment "will not lie . . . if the evidence

is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990). The existence of a mere scintilla of evidence in support of the non-moving party's position ordinarily will not be sufficient to defeat a motion for summary judgment. *Id.* (citing *Anderson*, 477 U.S. at 252).

"It is well settled that the non-moving party must cite specific portions of the record in opposition to a motion for summary judgment." *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1191 (6th Cir. 1997); *see also Guarino*, 980 F.2d at 410 ("Neither the trial nor the appellate court . . . will *sua sponte* comb the record from the partisan perspective of an advocate for the non-moving party."). Fed. R. Civ. P. 56(c)(1). "[T]he court is not required to search the record for some piece of evidence which might stave off summary judgment." *Id.* It is also well settled that "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. U.S. Nuclear Regul. Comm'n*, 59 F.3d 284, 293-94 (1st Cir. 1995)).

## III. Analysis

### A. Applicable Legal Principles

The PLRA "requires state prisoners to follow and exhaust all applicable state grievance procedures before filing suit in a federal court." *Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017) (footnote omitted). "A prisoner exhausts his remedies when he complies with the grievance procedure put forward by his correctional institution." *Id.* (citation omitted). Under

the applicable Ohio three-step grievance procedure, an inmate must first, within 14 days of the event giving rise to the complaint, file an Informal Complaint Resolution ("ICR") with the supervisor of the staff member or department responsible for the subject matter of the complaint. *See* Ohio Admin. Code § 5120-9-31(J)(1). If the inmate is dissatisfied with the step-one response, or no timely response is given, the inmate may file a Notification of Grievance ("NOG") with the inspector of institutional services within 14 days. *See* Ohio Admin. Code § 5120-9-31(J)(1)-(2). If the inmate is dissatisfied with the step-two response, or no disposition has been rendered after 28 days, the inmate may move to step three and file an appeal with the Office of the Chief Inspector ("Appeal") within 14 days. *See* Ohio Admin. Code § 5120-9-31(J)(2)-(3).

"[A]n inmate's failure to exhaust his administrative remedies is an affirmative defense (not a jurisdictional requirement)." *Lamb v. Kendrick*, 52 F.4th 286, 292 (6th Cir. 2022). Defendants have the burden of production and persuasion; they must prove a failure to exhaust with evidence and Plaintiff must obtain and present evidence to rebut the defense or establish an applicable exception. *See id.*; *see also Spencer v. Jordan*, No. 1:22-cv-557, 2025 WL 81267, at *4 (S.D. Ohio Jan. 13, 2025) (an inmate "must put forth evidence"), *aff'd*, No. 25-3090, 2025 WL 4230709 (6th Cir. Nov. 25, 2025) (Order). "A district court should grant summary judgment only if a defendant establishes that there is no genuine dispute of material fact that the plaintiff failed to exhaust." *Does 8-10 v. Snyder*, 945 F.3d 951, 961 (6th Cir. 2019) (citation omitted). When a PLRA defendant seeks to preclude a plaintiff inmate's claim on exhaustion grounds, the "initial summary judgment burden is 'higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no

reasonable jury would be free to disbelieve it.'" *Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012) (quoting *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001) (quoting 11 James William Moore et al., Moore's Federal Practice § 56.13[1], at 56–138 (3d ed. 2000))).

There is an exception to the exhaustion requirement when (1) officers are unable or consistently unwilling to provide relief to aggrieved inmates, rendering the grievance process "a simple dead end," (2) when "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it" because it is "so opaque" or "so confusing," or (3) prison officials thwart prisoners from utilizing the grievance process through machination, misrepresentation, or intimidation. *Ross v. Blake*, 578 U.S. 632, 643-44 (2016). Showing that an administrative procedure was unavailable under one of those three definitions does not "automatically absolve[] [an inmate] from the PLRA's exhaustion requirement." *Lamb*, 52 F.4th at 293. Rather, the inmate must have taken "affirmative efforts to comply with the administrative procedures" as a precursor to successfully asserting the unavailability argument in a later federal action. *Id.* (quoting *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015)).

**B. Whether an Administrative Procedure was Unavailable**

On November 1, 2023 or fifty-one (51) days after the September 11, 2023 assault incident, and well outside the 14 day window to file an Informal Complaint Resolution, Plaintiff wrote an informal complaint regarding the assault and complaining about the institutional staff's lack of response. *See* Grievance #382677271 (ECF No. 37-19); Grievance #382680941 (ECF No. 37-20).

Plaintiff argues the within motion should be denied because Defendants are not protected by their affirmative defense. According to Plaintiff, Deputy Warden Evans and other prison officials actively misled Plaintiff about the grievance process until his time to submit a complaint had expired. Plaintiff proffers evidence that Deputy Warden Evans assured Plaintiff that paper forms were necessary to file a grievance and that they would be provided to Plaintiff but never were. The Sixth Circuit has held that the grievance procedures may become unavailable when prison officials have "thwarted the inmate's attempts at exhaustion." *Brock v. Kenton Cnty.*, 93 Fed.Appx. 793, 798 (6th Cir. 2004).

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. *Anderson*, 477 U.S. at 255; *Smith v. Campbell*, 250 F.3d 1032, 1036 (6th Cir. 2001); *Adams v. Metiva*, 31 F.3d 375, 384 (6th Cir. 1994).

Plaintiff argues Defendants' Motion for Summary Judgment rests on significant disputed factual questions regarding exhaustion that preclude summary judgment. According to Plaintiff, at least the following disputed material facts exist:

- whether Plaintiff had been given a proper orientation regarding the administrative grievance process;
- whether Deputy Warden Evans gave Plaintiff the information regarding the administrative grievance process;
- whether Deputy Warden Evans gave Plaintiff incorrect information regarding the administrative grievance process that thwarted his efforts to timely comply with the administrative grievance process; and
- whether Plaintiff had been precluded from appealing his grievance via his personal tablet.

Plaintiff's Opposition (ECF No. 47) at PageID #: 321-22. The Court agrees.

**1. Orientation**

Plaintiff argues that due to a lack of training regarding the grievance procedure prior to the assault, he had no knowledge or orientation on the administrative requirement that "[w]ithin fourteen calendar days of the date of the event giving rise to the complaint, the inmate shall file an informal complaint to the direct supervisor of the staff member, or department most directly responsible for the particular subject matter of the complaint." Ohio Admin. Code § 5120-9-31(J)(1). Plaintiff admits, however, that he sat through orientation about the grievance process, but "didn't do any retention." Deposition of Johnny Evans (ECF No. 48-3) at PageID #: 866:5. Within a week of his arrival at TCI, Plaintiff signed a form "acknowledg[ing] that I have received Orientation on the above area [sic] from staff." Orientation Acknowledgement Form (ECF No. 47-2). The form lists four (4) topics to be completed upon arrival, including "Verbal/Written Explanation of the Grievance System.," It also lists 34 topics for "Orientation" to be completed within seven (7) calendar days of arrival, including "Incarcerated Person Grievance Procedures/Inspector," as well as a wide range of other topics. Plaintiff's signature on the Orientation Acknowledgment Form, however, does not establish that Plaintiff actually received any meaningful training regarding the orientation process. *Reynolds v. Smith*, No. 2:11-cv-00277, 2012 WL 293012, at *3, 5 (S.D. Ohio Feb. 1, 2012) (concluding defendants had not met their burden of demonstrating that plaintiff failed to exhaust the administrative remedies available to her when plaintiff had been given a prison handbook on admission but it had been taken from her shortly thereafter, and she reported a sexual assault and followed staff directions without ever being told that she was not following proper procedures). Despite seemingly covering over 30 topics, Plaintiff's testimony is that the "Orientation" training was perfunctory

and lasted roughly 30 minutes. *See* Declaration of Johnny Evans (ECF No. 47-1) at PageID #: 333-34, ¶ 4 ("In total, this orientation provided after my transfer to TCI consisted of roughly 30 minutes of lectures by employees at TCI. Despite the 'Orientation Acknowledgement Form' listing 'Incarcerated Person Grievance Procedures/Inspector,' as one of the topics of orientation, I neither received a verbal/written explanation of the grievance system nor received a handbook or other documentation for my review regarding the grievance procedures."); Excerpts of Deposition of Johnny Evans (ECF No. 47-3) at PageID #: 344:9-12 ("some [facilities] just give you your paper saying that, that we basically talked to you, sign it and you're done; where some just sit you down for like 10, 15 minutes and ask you certain questions"). According to Plaintiff, the TCI orientation failed to cover many of the topics listed on the Orientation Acknowledgement Form (ECF No. 47-2), including TCI's mechanism for filing a grievance or its requirements. *See* ECF No. 47-1 at PageID #: 333-34, ¶ 4. In addition, Plaintiff testified on cross-examination at his deposition as follows:

> Q Okay. And at the top of the right-hand column there's a check mark for the grievance system?
> A Yes.
> Q Okay. And that indicates that you reviewed that with the institution, correct?
> A No.
> Q Okay. You didn't review that with the institution?
> A No.

ECF No. 47-3 at PageID #: 346:10-18. Plaintiff also contends that outside of the Orientation Acknowledgement Form, there is no evidence that he received any training or notice of the requirement that he submit a grievance within 14 days of the underlying incident.

Defendants argue to the contrary. They cite testimony that Plaintiff attended an orientation about all aspects of prison life at TCI, including the grievance procedure, that lasted several hours. Deputy Warden Evans testified on cross-examination at his deposition:

> A So during the -- during the orientation process -- so when -- the incarcerated adults, when they come in to their prison, there's orientation. So that -- that is explained to them there, absolutely.
>
> Q Do you know what that orientation consists of?
>
> A There's a whole list of -- of things. They go over pretty much every aspect of -- of their life here at their prison. So they talk about commissary, they talk about all kind of different things. Cashier's office, they talk about the grievance procedure and all that -- all that stuff like that.
>
> Q How long does that orientation take?
>
> A Several hours.

Deposition of Brian Evans (ECF No. 47-8) at 46:8-21. Warden Davis testified on cross-examination as follows at his deposition:

> A So every Thursday at 8:30 a.m. in our chapel, all incarcerated men that have arrived at TCI during those prior six days would get a pass to go to that orientation. It -- it lasts about two hours, and various departments in person come to orientation, and they do their part. For example, the inspector would talk about the grievance procedure.

Deposition of Anthony Davis (ECF No. 47-7) at 35:21- 36:2. The Inspector of Institutional Service ("IIS") for TCI, Felepa Lowery, attests she personally instructed Plaintiff on the grievance procedure and the timeline associated with that procedure. *See* Declaration of Felepa Lowery (ECF No. 48-1) at PageID #: 816, ¶ 13 ("[Plaintiff] was present during this orientation and received instructions on the grievance procedure personally from myself."). She informed Plaintiff that he would be unable to escalate his informal complaint if it was not done within 14 days. *See* ECF No. 48-1 at PageID #: 815, ¶ 5.

Resolving this contradiction requires weighing witness credibility. Again, it is not the role of judges to choose between conflicting factual accounts at the summary judgment stage of a case. *Anderson*, 477 U.S. at 255 (stating that resolving contradictory testimony requires making credibility determinations and weighing evidence, which are improper at summary judgment because they "are jury functions, not those of a judge").

**2. Whether Deputy Warden Evans Gave Plaintiff the Information or Gave Plaintiff Incorrect Information**

Plaintiff claims Deputy Warden Evans provided faulty information that needlessly delayed Plaintiff from timely submitting his grievance. During a round of the Transitional Program Unit ("TPU") conducted by Deputy Warden Evans, Plaintiff asked Deputy Warden Evans for the name of the construction company retained by TCI to work on the construction site from which Plaintiff's assailants obtained the rock used in the assault. *See* ECF No. 47-1 at PageID #: 334, ¶ 8. Deputy Warden Evans asked Plaintiff why he was inquiring about the name of the construction company; Plaintiff responded that he intended to submit a complaint regarding the September 11, 2023 assault. *See* ECF No. 47-1 at PageID #: 334, ¶ 9 ("When I initially asked Deputy Warden Evans for this information, he inquired why this information was necessary. I informed Deputy Warden Evans that I intended to submit a complaint regarding my assault since a rock from the construction site was used to assault me."); *see also* ECF No. 47-8 at 64:16-65:3. Plaintiff's conversation with Deputy Warden Evans likely took place on September 15 or 17, 2023, which is within 14 days of the event giving rise to the complaint. *See* Employee Visit Records (ECF No. 47-9) at PageID #: 521; 524.

During a subsequent round of TPU by Deputy Warden Evans, Plaintiff reminded Deputy Warden Evans that Plaintiff intended to submit a complaint regarding his assault and asked Deputy Warden Evans how he could do so. *See* ECF No. 47-1 at PageID #: 334, ¶ 11 ("Some time later, Deputy Warden Evans conducted another round of TPU. During that round, I asked Deputy Warden Evans how I could file an informal complaint. Deputy Warden Evans indicated that I would need to file a complaint on a paper form and that he would bring the paper form to me. . . ."). This conversation with Deputy Warden Evans likely took place on October 2, 11 or 12, 2023. *See* ECF No. 47-9 at PageID #: 544; 554; 557. "Deputy Warden Evans did not bring the paper that he indicated [Plaintiff] would need to file an informal complaint." ECF No. 47-1 at PageID #: 335, ¶ 12. "Some time later," Deputy Warden Evans informed Plaintiff that "TCI no longer used a paper system" for grievance submissions, and that Plaintiff should instead submit the grievance on his personal tablet. ECF No. 47-1 at PageID #: 335, ¶ 13. This conversation with Deputy Warden Evans likely took place on October 25 or November 1, 2023. *See* ECF No. 47-9 at PageID #: 575; ECF No. 47-8 at 60:8-20 (Deputy Warden Evans was required by the Ohio Department of Rehabilitation and Corrections' written procedures to conduct TPU rounds at least once a week).

Defendants argue that the evidentiary record s contains facts showing that Plaintiff did know, or should have known, how to file a grievance under TCI's procedures. They note Plaintiff's electronic footprint "contradicts" ¶ 11 of Plaintiff's Declaration. ECF No. 48 at PageID #: 809. Before that alleged conversation took place between Plaintiff and Deputy Warden Evans, Plaintiff submitted a direct grievance to the Office of the Chief Inspector on September 30, 2023. *See* Grievance #340447171 (ECF No. 37-16). According to Defendants,

this grievance demonstrates that Plaintiff knew how to electronically submit grievances. Moreover, in his response the next day, Chief Inspector Chris Lambert directed Plaintiff to Ohio Admin. Code § 5120-9-31 for information on grievances. Plaintiff viewed the response on October 2, 2023. *See* ECF No. 37-16. "That [a prisoner] was able to file some grievances does not mean that he was able to file all relevant grievances or that he was not prevented from timely filing the grievances." *Surles*, 678 F.3d at 458.

While Defendants may ultimately be correct---that Plaintiff knew how to electronically submit grievances---this contrary evidence puts the matter of whether Deputy Warden Evans gave Plaintiff the information or gave Plaintiff incorrect information in genuine dispute. That is a matter reserved for a jury. This contrary evidence at this stage only serves to create a factual dispute that the Court cannot resolve on summary judgment when the evidence must be viewed in the light most favorable to the non-moving party. *See, e.g.*, *Dallio v. Sanatamore*, No. 9:06-CV-1154 (GTS/DRH), 2010 WL 125774, at *9 (N.D.N.Y. Jan. 7, 2010) (denying summary judgment due to hesitancy to resolve credibility issues and weighing evidence on summary judgment when plaintiff alleged that he was repeatedly kicked and punched after he was subdued and restrained by correction officers, despite evidence showing both minor injuries plaintiff suffered and defendants' contrary evidence).

**3. Plaintiff's Personal Tablet**

Defendant argues that Plaintiff had access to the grievance process through his tablet, but he did not utilize it. Defendants note that Plaintiff used his tablet to file multiple kites, informal complaints, and other electronic communication. *See, e.g.*, ECF No. 48-3 at PageID #: 844:23 - PageID #: 865:7; Kite #288105851 (ECF No. 37-1) (viewing staff response on September 20,

2023); Kite #317842081 (ECF No. 37-9) (requesting information from the law library on September 20, 2023); ECF No. 37-20.

Upon receiving correct guidance on TCI's grievance process, Plaintiff made affirmative efforts to comply with the administrative procedure. On November 1, 2023, Plaintiff filed two grievances through his tablet regarding the September 11, 2023 assault. *See* Grievance #382677271 (ECF No. 37-19); Grievance #382680941 (ECF No. 37-20); ECF No. 47-1 at PageID #: 335, ¶ 14. Plaintiff maintains that even after those grievances were submitted (despite Defendants' efforts), the tablet provided to him lacked the ability to escalate his grievance, as required by Ohio Admin. Code § 5120-9-31(J)(1)-(2). Although Grievance #382677271 (ECF No. 37-19) was denied by IIS Lowery on November 2, 2023, Plaintiff was not given the option to escalate his grievance. *See* ECF No. 47-1 at PageID #: 335, ¶ 15 ("[T]here should be an option to escalate my grievance on my tablet. However, no such option appeared on my tablet."); ECF No. 47-3 at PageID #: 349:20-22 ("Q But you didn't escalate this, this grievance, did you? A Couldn't."). In fact, the TCI staff's response to Grievance #382677271 regarding the assault specifically states "[i]n accordance with AR 5120-9-31 this complaint will not be subject to additional review and will not be eligible for escalation." ECF No. 37-19 at PageID #: 244.[2] Plaintiff's subsequent attempts to raise concerns and issues regarding the assault to TCI staff went unanswered and unaddressed. *See* ECF No. 47-1 at PageID #: 335, ¶ 17. As a result of

[2] Defendants note that Plaintiff did not view IIS Lowery's response, or J. Burke's response to the (later in time submitted) informal complaint, Grievance #382680941 (ECF No. 37-20), until November 22, 2023. That was after the 14-day escalation time period had elapsed.

this refusal to assist Plaintiff and the inability to escalate his grievance using the tablet, Plaintiff filed this action on September 3, 2024.

## IV. Conclusion

Viewing Plaintiff's probative evidence and all reasonable inferences drawn therefrom in the light most favorable to Plaintiff, the Court concludes that there are genuine issues of material fact and the movants are not entitled to a judgment as a matter of law. For the foregoing reasons and those that have been articulated in the memorandum of the points and authorities on which Plaintiff relies, Defendants' First Motion for Summary Judgment Concerning Exhaustion (ECF No. 37) is denied. The Court will not weigh the evidence or make credibility determinations and will, therefore, allow Plaintiff's claims to proceed to a jury.

IT IS SO ORDERED.

September 25, 2026
Date

*/s/ Benita Y. Pearson*
Benita Y. Pearson
United States District Judge